# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0441, <u>K.F. v. T.D.</u>, the court on February 28, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(3). The defendant, T.D., appeals a civil stalking final order of protection, <u>see</u> RSA 633:3-a (Supp. 2024), entered against him by the Circuit Court (<u>Zaino</u>, J.) for the protection of the plaintiff, K.F. We reverse.

I.      <u>Background</u>

The following facts are supported by the record. On April 2, 2024, the plaintiff filed a stalking petition against the defendant. The trial court held a hearing on the petition on June 24. The plaintiff testified that the reason she sought a protective order was because the defendant stated on Facebook that "he was going to treat [her] husband like it was Gaza war and that there was going to be no cease fire. And he was going to get all men boots on the ground, available and ready to come after [her] husband. And there was going to be casualties on one end." The plaintiff testified that she was "in fear of [her] life because of that post."

Defense counsel explained that the post was part of an exchange between the defendant and a third person (H) about the plaintiff's husband. For context, defense counsel noted that the defendant and the plaintiff's husband had been engaged for years in a written "battle" on Facebook. The post, a transcription of which was entered into evidence, began with H stating, "You 2 need to hug it out. Peace is way better than war. This eshhhh funny . . . though." In response, the defendant stated:

H . . ., let me put it this way. I'm Israel. He is the Palestinians.

I have forgiven him and shaking his hand a half a dozen times.

I have agreed to a cease-fire a half a dozen times. I have walked away from his multiple unprovoked assaults a dozen times. He has shaking my hand and giving me his word more times than I can count now.

He has violated every single . . . agreement and broken his word every single . . . time.

> Every single time without warning, he crosses the line, violates the agreement, Commit a heinous act, and then, ….. when I start responding ….And he sees what's coming his way … He hides behind his wife and cries for a cease-fire.
>
> There will be no cease-fire this time.
>
> This time I am going to enlist every single person humanly possible, Marshall all of my forces, put together a very well thought out Ground offensive and then at the time and place of my choosing start rolling my tanks into Gaza.
>
> This isn't even the warm-up, my friend!
>
> Like the Israelis, I'm putting an end to this once and for all. This will be a long, brutal, protracted war, the damage will be one-sided, the casualties will be one-sided, and the devastation will be one-sided.
>
> Without full surrender, and total reparations there will be no cease-fire.
>
> Not only did [the plaintiff's husband] falsely accuse [an individual] of stealing money from the homeless …he walked up to my car at Tmf and said my father got what he deserved, and if I didn't stop talking s*** about him, the same thing was going to happen to me.
>
> That was his October 7
>
> Let the ground invasion of Gazza begin.

On July 10, the court issued a stalking final order of protection. The court found that the defendant "recklessly engaged in a course of conduct when he declared war against the plaintiff's husband like Israel against Palestine, that he will marshal all of his forces, put together a ground offensive, said it would be a brutal, protracted war, the damage will be one-sided, the casualties will be one-sided, and there will be no cease fire." The trial court concluded that those statements "would cause a reasonable person to fear for his/her safety" and that the plaintiff "was placed in fear." This appeal followed.

II.    Analysis

On appeal, the defendant argues that there was insufficient evidence to support the trial court's order. We review sufficiency of the evidence claims as a matter of law and will uphold the trial court's findings and rulings unless

they are lacking in evidentiary support or are erroneous as a matter of law. S.D. v. N.B., 176 N.H. 44, 47 (2023).

Stalking is defined as "[p]urposely, knowingly, or recklessly engag[ing] in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear." RSA 633:3-a, I(a). The statute defines "course of conduct" as "2 or more acts over a period of time . . . which evidences a continuity of purpose," and may include "[t]hreatening the safety of the targeted person or an immediate family member." RSA 633:3-a, II(a)(1).

The defendant argues that the statements in the Facebook post in which he "analogizes his battle with the [plaintiff's] husband to Israel and Palestine" are "clearly hyperbolic and sensational" such that they would "not have caused a reasonable person to fear for her safety." (Underlining omitted.) He asserts that no reasonable person would understand the words in the post to literally mean that he and the plaintiff's husband "have, in the past, used actual weapons to shoot at each[ ]other, and then stopped pursuant to an actual cease-fire agreement," or that the plaintiff's husband has "committed a heinous act[], or actually, physically, hid behind his wife," or that the defendant was going to engage in "an actual violent 'ground invasion,'" or "use people, or tanks, under his command to plan and execute physical violence."

We agree with the defendant that the statements in the post were insufficient, as a matter of law, to constitute conduct "[t]hreatening the safety" of the plaintiff. RSA 633:3-a, II(a)(1). When determining whether conduct caused the plaintiff to fear for her safety, an objective, reasonable person standard applies. See RSA 633:3-a, I(a) (requiring "a reasonable person to fear for . . . her personal safety"); Comer v. Tracey, 156 N.H. 241, 249 (2007) (finding evidence of course of conduct insufficient to support conclusion reasonable person would have been placed in fear for personal safety). Even assuming the statements were targeted at the plaintiff, a reasonable person would not have interpreted the language in the post as a serious expression of a threat to her personal safety to support a finding of stalking. Accordingly, we reverse.

Reversed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**